# IN THE UNITED STATES COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY MANSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 3024 |
| ) | |
| CITY OF CHICAGO, ) | Magistrate Judge Morton Denlow |
| KEVIN CUHLANE, ) | |
| CAROL McGHEE, ) | |
| PATRICIA PERKOVICH, and ) | |
| DANIEL STANEK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This civil rights suit stems from an incident in which several Chicago Police Department officers searched Plaintiff Anthony Manson's ("Plaintiff") house and arrested him for violating an Illinois law about animal owners' duties. Plaintiff brings the action against Defendants City of Chicago, Officer Kevin Cuhlane, Officer Carol McGhee, Officer Patricia Perkovich, and Officer Daniel Stanek (collectively "Defendants"). He alleges an unreasonable search, failure to intervene, false arrest, and malicious prosecution by the individual defendants, and asserts an indemnification count against Chicago. In response, Defendants have filed a motion for partial summary judgment, on the false arrest (Count III) and malicious prosecution (Count IV) counts of Plaintiff's First Amended Complaint. For the reasons explained below, the Court grants Defendants' motion for partial summary judgment.

# I. BACKGROUND FACTS

The incident that gave rise to this lawsuit occurred on May 23, 2006 at Plaintiff's house at 1118 North Mason Avenue in Chicago. DS[1] ¶¶ 7, 20. Although Plaintiff resided in the three-bedroom, single-family home, he also used it as a rooming house and had at least fourteen tenants living with him. DS ¶¶ 7–11. The residence also housed Plaintiff's four grown pit bulls. ¶ 12. The dogs were kept in cages in the basement. DS ¶ 17. The pit bulls were named Midnight, Nasty, Big Red, and Little Red. DS ¶ 12.

On May 23, 2006, Officers Cuhlane, McGhee, Perkovich, and Stanek (collectively "the Officers") conducted a search of Plaintiff's home pursuant to a valid search warrant. DS ¶ 20. The search warrant was for narcotics and the subject of the warrant was a man named John Wilson. DS ¶ 21. Plaintiff and his four pit bulls were present in the house during the search. DS ¶ 22. In the course of the search, the Officers observed Plaintiff's dogs. Although the pit bulls were full-grown, the cages found in the basement were puppy cages. DS ¶¶ 12, 27. In addition, the dogs' bowls lacked food or water, and the search revealed there was no dog food in the house. DS ¶¶ 23–25.

The Officers also assert that two of the pit bulls appeared to have fighting injuries. Defendants have produced pictures that appear to portray these fighting injuries. DX I, K.

---

[1] "DS" refers to Defendant's Local Rule 56.1 Statement of Undisputed Facts, Dkt. 75. "DX" refers to exhibits attached to that document. "PR" refers to the responses and "PS" to the statement of additional facts contained in Plaintiff's Response to the Defendants' Statement of Undisputed Facts and Plaintiff's Statement of Additional Material Facts, Dkt. 88. "PX" refers to exhibits attached to that document.

Evidence Technician Eric Szwed submitted an affidavit attesting that he took the photographs on May 23, 2006 at an Animal Care and Control center after they were removed from Plaintiff's home, and that they truly and accurately depict the dogs he photographed. Szwed Aff. ¶ 4, DX H.  Tendered pictures of Midnight show a black pit bull with scars and open wounds covering its head and at least one front leg.  DX I.  A tendered picture of Big Red depicts a light brown pit bull with a torn ear and scars or open wounds on its head. DX K.  At his deposition, Plaintiff admitted that both pit bulls in these pictures appeared to have fighting injuries.  Manson Dep. 369, 372, DX G.  Affidavits from three of the Officers also authenticate the photographs as pictures of the dogs they observed while searching Plaintiff's home.  Stanek Aff. ¶ 5, DX P; McGhee Aff. ¶ 5, DX Q; Culhane Aff. ¶ 9, DX R.

Nevertheless, Plaintiff denies that the pictures accurately represent his dogs' condition at the time of the search.  In his response to Defendants' statement of uncontested facts, Plaintiff "denies the photographs were of his dogs," and also denies that an evidence technician took the photographs. PR ¶¶ 26, 28.  In support of his position, Plaintiff cites a passage of his own deposition testimony, at which Plaintiff was confronted with one of the alleged pictures of Midnight.  After Plaintiff viewed the photograph, the following exchange took place:

> Q. . . .
>    Which—that's your dog, right?
> A. It looks like one of them.
> Q. Okay. Which One is that?
> A. It look like Midnight.
> Q. Midnight?
> A. Yes.
> Q. Okay. Do you have any reason to believe that's not Midnight?
> A. Yes, I do.
> Q. Why?
> A. Because he didn't look like that when he left my house.
> Q. Okay. What did he look like?
> A. Shorter nozzle, bigger head, nowhere near that many scar, if he had any.
> Q. Okay. So is it your testimony that that is not your dog?
> A. That's right.
> Q. Okay.
> A. It might be, it just don't look like him.
> Q. Well, why would you say "it might be"?
> A. Because it just don't look like him.

Manson Dep. 360–61, DX G. Plaintiff also cites a later statement in the deposition, when Plaintiff was again asked if one of the "Midnight" pictures, this one showing marks on the dog's right side, portrayed his dog. Plaintiff responded, "I'm not sure. If it is, he didn't look like that when he left my house." Manson Dep. 364.

After observing Plaintiff's pit bulls, the Officers summoned Animal Care and Control Officer Ernie Loza to investigate the treatment of Plaintiff's pit bulls. DS ¶ 29. Loza has held his position for ten years and has specialized knowledge relevant to identifying pit bulls that have been used for dog fighting. DS ¶ 30. He has seized over ten thousand pit bulls in his time working for Animal Care and Control. DS ¶ 31. When Loza arrived at Plaintiff's house, he observed a "spring pole" in Plaintiff's back yard. DS ¶ 35. Dog fighters

commonly use spring poles to strengthen the biting grip of their dogs in preparation for fighting. *Id.* Loza also observed the dogs and Plaintiff's basement. PS ¶ 10.

Plaintiff disputes most of the rest of Loza's investigation, on the ground that he failed to recall the details during his deposition. Loza's deposition occurred on March 22, 2011, almost five years after the incident in question. PX 1. At the deposition, Loza did not recognize any of the Officers, who were also present, or recall any conversations he had with them during his investigation at Plaintiff's home. PR ¶ 14–17. He described the dogs he seized as American Pit Bulls, but he could not remember exactly how many dogs there were. PS ¶ 11–12; Loza Dep. 19–20, PX 1. He testified that the number was at least two but no more than five. Loza Dep. 19–20. That said, Loza did recall that the dogs were in small containers, appeared to have bites from dog fighting, and had cropped ears. *Id.* at 19. Defendants note that Loza swore out an affidavit, dated November 18, 2010, that supplied a number of the details he could not recall four months later in his deposition. DR ¶¶ 11, 14–16 (citing Loza Aff., DX S).

The Officers arrested Manson and charged him with a misdemeanor offense of violating animal owners' duties under Illinois law. DS ¶¶ 37–38. Defendants assert that the decision to arrest Plaintiff was based on both the Officers' own observations and the Officers' conversations with Loza after his investigation. DS ¶ 38. Plaintiff denies that any statements from Loza formed a basis for the arrest, citing Loza's deposition testimony that he did not recall whether or not he conversed with the Officers. PR ¶ 38 (citing Loza Dep. 23, 30).

Plaintiff's criminal charge was stricken off with leave to reinstate by the Cook County State's Attorney's Office on September 20, 2006, because none of the witnesses subpoenaed for Plaintiff's trial appeared in court. DS ¶¶ 40–41. At this same hearing, Plaintiff's counsel put a trial demand on the record. Trial Trans. 2, DX U.

## II. LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether summary judgment should be granted, the court interprets all facts and reasonable inferences "in the light most favorable to the nonmovant party." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). The opposing party is required to present genuine evidence of factual dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and may not rely on "mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 248 (citation omitted). Uncorroborated testimony from the nonmovant can be evidence of disputed material facts, if based on personal knowledge or firsthand experience. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). That said, if a plaintiff's evidence is "'merely colorable' or 'not significantly probative,' then there is no genuine issue for trial and summary judgment is appropriate." *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024, 1030 (7th Cir. 2006) (quoting *Anderson*, 477 U.S. at 249–50).

# III. DISCUSSION

A. **The Officers Had Probable Cause to Arrest Plaintiff for Violating Animal Owners' Duties Under Illinois Law.**

If the Officers had probable cause to arrest Plaintiff, then both the false arrest and malicious prosecution counts must fail. Count III of the complaint asserts a false arrest claim under 42 U.S.C. § 1983, alleging that the Officers violated Plaintiff's Fourth Amendment rights when they arrested him. Probable cause is an absolute bar to false arrest claims brought under § 1983. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Count IV sets forth a malicious prosecution claim under Illinois law. Lack of probable cause is likewise an element of that tort. Under Illinois law, the elements of malicious prosecution are (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009).

Police officers obtain probable cause to arrest an individual when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa*, 442 F.3d at 547 (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). When determining probable cause, courts evaluate the facts "as they would have appeared to a reasonable person in the position of the arresting officer," rather than viewing the facts "as an omniscient observer would perceive them." *Williams v.*

*Rodriguez*, 509 F.3d 392, 398–99 (7th Cir. 2007) (quoting *Mustafa*, 442 F.3d at 547). In situations where multiple officers work together to effect an arrest, "the knowledge of one police officer is imputed to other officers when they are in communication regarding a suspect." *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007).

Here, the Officers arrested Plaintiff for violating his duties as an animal owner under an Illinois statute which states:

> Each owner shall provide for each of his animals:
> (a) sufficient quantity of good quality, wholesome food and water;
> (b) adequate shelter and protection from the weather;
> (c) veterinary care when needed to prevent suffering; and
> (d) humane care and treatment.

510 Ill. Comp. Stat. 70/3.

The Officers had probable cause to arrest Plaintiff under this statute, based on what they observed while searching his house. Most obviously, the injuries to Plaintiff's dogs would have led a reasonable person in the Officers' position to believe that Plaintiff had failed to provide "humane care and treatment" for his dogs. 510 Ill. Comp. Stat. 70/3(d). The pictures of Midnight are a particularly sad sight. They depict a multitude of both scars and open wounds consistent with bite marks, suggestive of an abused animal. DX I. Likewise, Big Red appears to have bite marks on his head. DX K. Taken together with the fact that the animals were pit bulls, a breed known for use in dog fighting, it was reasonable for the Officers to conclude that Plaintiff had denied his animals "humane care and treatment" by causing them to fight. Indeed, Plaintiff admitted in his deposition that the

-8-

pictures at issue appear to show dogs with fighting injuries. Manson Dep. 364, 369, 372.

Of course, Plaintiff has attempted to create a fact issue about the condition of his dogs by denying the authenticity of Defendants' photographs. But the photographs have been authenticated by the Officers and by the evidence technician who took them,[2] and Plaintiff's denials do not even rise to the level of plausibility, much less raise a genuine fact issue. Looking to Plaintiff's denial in his Local Rule 56.1 statement, the cited testimony only discusses the "Midnight" photographs and is non-responsive to the "Big Red" photographs, so the Court deems admitted that the pictures of Big Red are authentic. *See* N.D. Ill. L.R. 56.1(b)(3)(C); *Sarlo v. Wojcik*, 08 C 2194, 2010 WL 3824161, at *4 (N.D. Ill. Sept. 23, 2010) (detailing the strict compliance expected with Local Rule 56.1). Concerning the photographs of Midnight, Plaintiff does cite testimony from his deposition in which he asserted that Midnight looked different from the pictures. Taken in context, however, Plaintiff's testimony was too equivocal and self-contradictory to qualify as genuine evidence of a factual dispute. Initially, Plaintiff testified (and re-affirmed) that the picture looked like Midnight. Manson Dep. 360. Only when pressed about whether he had any reason to doubt the picture's authenticity did Plaintiff voice doubts about the picture. He stated that

---

[2] Plaintiff does dispute the memory of Officer McGhee, based on her deposition testimony that she did not recall whether she conducted an investigation "into the animal cruelty charges that were brought against Mr. Manson." McGhee Dep. 44, PX 2. In context, Officer McGhee appears to have been referring to a post-search investigation, because she had already testified that she remembered seeing the dogs and visiting Plaintiff's basement. *Id.* at 42–43. But even assuming that a fact issue exists about Officer McGhee's observation of the dogs, the knowledge of her fellow officers would be imputed to her, since they were "in communication regarding a suspect." *Ellis*, 499 F.3d at 690.

Midnight had a "[s]horter nozzle, bigger head, [and] nowhere near that many scar, if he had any." *Id.* Plaintiff then testified that the pictured animal was not his dog, then hedged again, stating "It might be, it just don't look like him." *Id.* at 360–61. In the absence of any independent evidence, Plaintiff's equivocal deposition statements could not prevent a reasonable juror from concluding that the pictures are authentic. *See S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 809 (N.D. Ill. 1998) (holding deposition testimony failed to create fact issue because it was "internally inconsistent, flatly contradicted by documentary and physical evidence, and uncorroborated").

More importantly, the Officers had probable cause to arrest Plaintiff based soley on facts that Plaintiff has conceded, even absent the physical condition of his dogs. The Officers discovered empty food and water bowls and no dog food in the house. PR ¶¶ 23–25. These facts gave the Officers probable cause to believe that Plaintiff had failed to provide the animals with "sufficient quantity of good quality, wholesome food and water." 510 Ill. Comp. Stat. 70/3(a). In addition, Plaintiff admits keeping his grown dogs in cages that the officers discovered to be puppy cages. PR ¶¶17, 27. The undersized cages, in combination with the lack of food and water, gave the Officers probable cause to believe that Plaintiff had failed to provide "humane care and treatment" for the animals. 510 Ill. Comp. Stat. 70/3(d).

Finally, since the Officers had probable cause to arrest Plaintiff before Animal Care and Control arrived on the scene, the Court need not decide whether a fact issue exists as to Loza's role in the arrest. Plaintiff's brief emphasizes Loza's failings of memory at his

deposition, but Loza's investigation and statements to the Officers are not material facts unless they could turn the outcome of the case. *See Anderson*, 477 U.S. at 248. They could not, because the Officers' own observations established probable cause even before Loza arrived on the scene. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003) (no further duty to investigate once probable cause established).

**B.     The Malicious Prosecution Claim Is Barred by the Statute of Limitations.**

Aside from failing on probable cause grounds, Plaintiff's malicious prosecution claim is also time-barred. Illinois has a one-year statute of limitations for civil actions "against a local entity or any of its employees." 745 Ill. Comp. Stat. 10/8-101(a). Although Plaintiff's § 1983 claims enjoy a two-year statute of limitations, this one-year statute of limitations applies to Illinois state-law actions joined with § 1983 claims. *Williams v. Lampe*, 399 F.3d 867, 869–70 (7th Cir. 2005). Plaintiff's criminal case was stricken with leave to reinstate on September 20, 2006, but the criminal proceedings did not terminate and Plaintiff's malicious prosecution claim did not accrue until the prosecutor could not longer reinstate the charge. *See Ferguson v. City of Chicago*, 820 N.E.2d 455, 461–62 (Ill. 2004). Defendants state, without explanation, that Plaintiff remained in jeopardy of the charge being reinstated only until October 2006. This assertion may or may not be correct, but the claim certainly accrued if and when a speedy trial act barred reinstatement. Plaintiff demanded trial immediately upon the state's motion to strike his case, so Illinois's speedy trial statute precluded reinstatement once 160 days passed. *See* 725 Ill. Comp. Stat. 5/103-5(b); *Ferguson*, 820

N.E.2d at 461–62. In other words, Plaintiff's malicious prosecution claim accrued, at latest, once the speedy trial period expired on February 27, 2007. Plaintiff filed this action more than a year later on May 23, 2008, so the statute of limitations bars Plaintiff's malicious prosecution claim.

Defendants moved to amend their answer with this statute of limitations defense after Plaintiff filed his response to their summary judgment motion. Though Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be raised in a defendant's answer, Rule 15(a) instructs that courts should "freely give leave" to amend pleadings "when justice so requires." The purpose of Rule 8(c) is fulfilled so long as a plaintiff receives notice of an affirmative defense and a chance to rebut it. *Williams*, 399 F.3d at 871. This Court therefore acted within its discretion by allowing Defendants to add the statute of limitations defense, and Plaintiff was not prejudiced, because the Court gave him a chance to brief the issue. DKT. 98. *See id.* ("[W]here the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered his complaint."). Plaintiff chose not to file an additional brief to address the statute of limitations issue.

Plaintiff's malicious prosecution claim thus fails both because there was probable cause for the charge against Plaintiff and because the claim is barred by the statute of limitations. The parties also contest whether Plaintiff's criminal charge was dismissed in a manner indicative of innocence (another element of the malicious prosecution claim), but the

Court need not address that point.

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Court grants Defendants' motion for partial summary judgment. Judgment is entered for Defendants and against Plaintiff on Counts III and IV of the First Amended Complaint.**

**SO ORDERED THIS 23rd DAY OF JUNE, 2011.**

*Morton Denlow*
_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies Sent To:**

| | |
|---|---|
| John S. Sawin | Erica A. Hokens |
| Sawin Law Firm, Ltd. | Geri Lynn Yanow |
| 217 N. Jefferson | City of Chicago, Department of Law |
| Suite 602 | Individual Defense Litigation |
| Chicago, IL 60661 | 30 North LaSalle Street Suite 900 |
| | Chicago, IL 60602 |
| Michael Edward Rediger | |
| Law Office of Michael E. Rediger | Counsel for Defendant |
| 217 North Jefferson | |
| Suite 602 | |
| Chicago, IL 60661 | |
| | |
| Counsel for Plaintiff | |